**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:25-cv-03379-DDD-KAS

SYLVIA MURRAY,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
STEVEN FOSTER, in his official and individual capacities,
GREGORY MOORE, in his official and individual capacities, and
AMBER MILLER, in her official and individual capacities,

      Defendants.

---

**PROPOSED SCHEDULING ORDER**

---

**1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL**

The Scheduling Conference pursuant to Fed. R. Civ. P. 16(b) is currently scheduled for

February 2, 2026, at 10:00 a.m. in Courtroom A-501, Fifth Floor, Alfred A. Arraj United States

Courthouse, 901 19th Street, Denver, Colorado 80294, before the Honorable Magistrate Judge

Kathryn A. Starnella. Appearing for the parties will be:

| | |
|---|---|
| Mari Newman | Jonathan D. Saadeh |
| Madeline Leibin | Assistant City Attorney |
| NEWMAN \| MCNULTY, LLC | Denver City Attorney's Office |
| 1490 N. Lafayette Street, Suite 304 | City and County of Denver |
| Denver, CO 80218 | 1200 Federal Boulevard, 4th Floor |
| mari@newman-mcnulty.com | Denver, CO 80204 |
| andy@newman-mcnulty.com | jonathan.saadeh@denvergov.org |
| madeline@newman-mcnulty.com | 720-944-2903 |
| 720-850-5770 | |
| | *Counsel for Defendants City and County of Denver,* |
| *Counsel for Plaintiff* | *Colorado, Steven Foster, Gregory Moore, and Amber* |
| | *Miller* |

1

## 2. STATEMENT OF JURISDICTION

This action arises under the Constitution and laws of the United States and Colorado and is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 2000e, *et seq*. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiffs' claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988 and Colo. Rev. Stat. § 13-21-131(3). Supplemental jurisdiction is based on 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of Colorado at the time of the events giving rise to this litigation.

## 3. STATEMENT OF CLAIMS AND DEFENSES

**Plaintiff:**[1]

Sylvia "Niecy" Murray is a Black woman, and an outstanding civil servant who earned the trust of the Denver community across six years of leadership at the Denver Civil Service Commission ("the Commission"). Ms. Murray was excellent despite being subjected to racist and sexist discrimination during her time as Executive Director at the Commission. Throughout her tenure, Ms. Murray received exclusively excellent reviews, and she received the top tier in merit increases every year of her tenure based on her performance. Ms. Murray was never disciplined during her tenure as Executive Director, nor was she reprimanded in any way. In fact, Ms. Murray received no communication whatsoever indicating any deficiency in her performance.

Ms. Murray excelled despite severe and pervasive race and sex discrimination by the

---

[1] Plaintiff's Operative Complaint and Jury Demand is hereby incorporated as if set forth fully herein.

2

Commission and Defendant Commissioners Steven Foster, Gregory Moore, and Amber Miller, who sought to undermine her authority and dismiss her expertise because she is a Black woman. From Defendant Foster's first onboarding meeting with Ms. Murray, he took little interest in her, her role, and her expertise. Instead, he wanted to speak with the male Chiefs of the Denver Police Department ("DPD") (Ron Thomas) and Denver Fire Department ("DFD") (Desmond Fulton). Defendant Foster repeatedly urged Ms. Murray to seek advisement from these two men even though they were neither Ms. Murray's nor Defendant Foster's supervisors, and their insights had no bearing on the Commission's decision-making. Actually, oppositely, Denver Code of Ordinances § 9.3.6 required that Ms. Murray and Defendant Foster were obligated to keep the Commission's decision-making independent of influence by DPD and DFD. On one occasion, Defendant Foster asked Ms. Murray, in a condescending tone, whether she had meetings with the DPD and DFD Chiefs, and then remarked something to the effect that it was Ms. Murray's job to serve, or be of service to, these two men. It was obvious to Ms. Murray and her staff that Defendant Foster's suggestion that Ms. Murray was to "serve" the two male Chiefs was racist and sexist. Defendant Foster refused to meet with Ms. Murray to discuss the operations of the Commission, despite her deep expertise and repeated offers to do so. It was clear to Ms. Murray that Defendant Foster completely discounted her because she is a Black woman.

Likewise, Defendant Moore regularly sidelined Ms. Murray. Defendant Moore began serving on the Commission in March of 2024. From the beginning of his tenure, when he agreed with Ms. Murray on Commission matters, he would email his votes and/or opinions only to her personally. But when he disagreed with her, he would opine publicly to all of the other Commissioners. By publicly withholding his support for her positions, Defendant Moore undermined Ms. Murray's leadership and discounted her expertise. And, when Ms. Murray told

3

Defendant Moore about Defendant Foster's discriminatory actions and statements, instead of recognizing Ms. Murray's valid complaints about the sexism and racism that she was experiencing, Defendant Moore attempted to silence Ms. Murray by telling her that she needed to make friends, and implying that she could leverage the decision-making regarding lowered hiring and promotional standards at DPD and DFD to gain friends on the Commission and, more broadly, the upper echelons of Denver government.

In late 2023, Ms. Murray observed that pressure from Mayor Mike Johnston's office to hire more DPD officers and DFD firefighters was resulting in lowered hiring and promotional standards. These lowered standards posed a great risk to public safety. In particular, the Chiefs of the DPD and DFD were pushing the Commission to hire applicants with concerning red flags in psychological and temperamental fitness reports, and interfering with the Commission's processes despite the clear City Charter rule dictating that the Commission operate independently of DPD and DFD. In addition, the DPD and DFD repeatedly brought requests to the Commission for candidates to be hired who did not complete — either at all, or satisfactorily — the requirements for hiring. As they made such requests, the DPD and DFD Chiefs dismissed Ms. Murray's legitimate concerns about allowing officers who were psychologically and temperamentally unfit to perform police work to matriculate onto Denver's police force.

Troublingly, the Defendants, through the Commission, instigated several rule changes in order to lower the standards for DPD and DFD candidates. For example, the Defendants, through the Commission, modified many DPD and DFD hiring and promotional requirements such that they went from being definite grounds for disqualification of candidates for hiring to being merely discretionary grounds for disqualification of candidates for hiring. The relaxed requirements included, but were not limited to, allowing candidates to matriculate who had: falsified

4

applications and/or on other forms or documents in any portion of the examination process; convictions of and/or deferred judgment for certain crimes; suspended and/or revoked driver's licenses; previously illegally possessed controlled substances; and/or dishonesty and/or integrity issues.

Ms. Murray was deeply concerned about the immense risks to public safety generated by these lowered hiring and promotional standards — including risks to civilians, as well as other DPD and DFD officers, so she repeatedly and explicitly spoke out about the dangerous threats to public safety posed by the lowered hiring and promotional standards for DPD and DFD. She also spoke out in opposition to the violations of City Charter by the Commission, and her discriminatory mistreatment. She did so to both to Commissioners and multiple other City and County of Denver ("Denver") officials outside of her chain of command. She was blatantly ignored.

First, Ms. Murray repeatedly tried to elevate her concerns to Defendant Miller, the Commission's President at the time. But in response, Defendant Miller ignored Ms. Murray's numerous requests to meet over several months. Defendant Miller ignored Ms. Murray despite her role and deep expertise because Ms. Murray is a Black woman. Then, when the two finally convened, and Ms. Murray detailed her concerns, Defendant Miller did not take any action to address the issue during the meeting. Nor did she take any actions in the weeks following the meeting. Up until her last day as Executive Director of the Commission, Ms. Murray sought to address the concerns she had with the hiring standards with Defendant Miller. Defendant Miller was unresponsive and dismissed Ms. Murray because she is a Black woman.

Given the utter inaction of the Commission despite her whistleblowing, Ms. Murray contacted several other Denver officials who were outside her chain of command with her concerns

— these individuals included Kathy Nesbitt, Executive Director of the Office of Human Resources for Denver; LaTonya Lacy, Executive Director of Administration for the Mayor's Office; Ester Lee Leach, the individual at the Mayor's Office responsible for placing Commissioners; a member of Denver's Office of the Independent Monitor ("OIM"), led by Lisabeth Pérez Castle; and Kerry Tipper, Denver's then City Attorney. Reporting wrongdoing within the Commission and with regard to the Commission's engagements with DPD and DFD was not one of the responsibilities or duties that Ms. Murray held in her role as Executive Director of the Commission. Reporting wrongdoing outside of the Commission was not one of the responsibilities or duties that Ms. Murray held in her role as Executive Director of the Commission.

In light of the refusal by multiple high-ranking Denver officials to address Ms. Murray's concerns, the growing improper influence of the DPD and DFD over the Commission, and her increasing concern for public safety, Ms. Murray reached out to Denver City Councilmembers Shontel Lewis, Sarah Parady, and Serena Gonzales-Gutierrez. She told the Councilmembers about the dangerous lowering of standards, ways that the Commission was violating the City Charter by allowing the Chiefs of the DPD and DFD to interfere with its processes, and discrimination she was continuing to face at the Commission. When the City Councilmembers heard Ms. Murray's concerns, they were appalled. They knew that the public emergently needed to know about the serious matters of public concern that Ms. Murray was raising with them.

To that end, on May 28, 2024, Ms. Murray, with Councilmembers Parady, Lewis, and Gonzales-Gutierrez, publicized her concerns about the imminent risks to public safety posed by the lowering of standards at a public press conference. During the press conference, Ms. Murray detailed how the hiring and promotional standards for DPD officers and DFD firefighters had been lowered to meet the Mayor's goals. She also spoke out about the improper influence wielded by

6

DPD Chief Thomas and DFD Chief Fulton over the Commission, corroding the Commission's City Charter-required independence.

That day, just hours following the press conference, Ms. Murray was terminated by the Commission. Defendants Foster, Moore, and Miller — who are final policymakers for Defendant Denver — participated in the Commission's decision to terminate Ms. Murray. Defendants terminated Ms. Murray because she is a Black woman who dared to speak out against the discrimination she was facing, as well as the dangerous threats to public safety posed by the Commission's lowered hiring and promotional standards at DPD and DFD and violations of City Charter.

To justify Ms. Murray's baseless termination, Defendants Foster, Moore, and Miller falsely claimed that Ms. Murray had performance issues. Defendants Foster, Moore, and Miller made these false and pretextual justifications about Ms. Murray's termination willfully and wantonly. Making it clear that Defendant Moore had no basis to believe that Ms. Murray had any performance issues, he had been a commissioner for less than three months when Ms. Murray was terminated.

Ms. Murray was replaced by Marygrace "Gracie" Perez, a woman who is not Black. Ms. Perez has had serious performance issues, but has neither been terminated by Defendant Denver, nor so much as reprimanded.

Defendant Denver fired Ms. Murray as part of its ongoing practice of silencing critics and whistleblowers, particularly critics and whistleblowers who are Black women. From Brent Miller, to Lisa Calderón, to Magen Dodge, to Brittany Iriat, to Carla Havard, to Jessica Calderon, Denver has, time and again, used its authority to shut down those who would dare inform the public about its racism and corruption. On information and belief, Defendant Denver never disciplined or

otherwise reprimanded any official for their actions with respect to these unlawfully terminated individuals.

Based on these facts, Plaintiff brings the following claims:

1. 42 U.S.C. § 2000e, *et seq.* — Title VII, Discrimination Based on Sex, Race, and/or Sex-Plus-Race, Against Defendant Denver;

2. 42 U.S.C. § 2000e, *et seq.* — Title VII, Retaliation, Against Defendant Denver;

3. 42 U.S.C. § 1983 — Section 1981, Race Discrimination, Against All Defendants;

4. 42 U.S.C. § 1983 — Section 1981, Retaliation, Against All Defendants;

5. 42 U.S.C. § 1983 — Fourteenth Amendment, Discrimination Based on Sex, Race, and/or Sex-Plus-Race, Against Defendants Thompson and Arcilla;

6. 42 U.S.C. § 1983 — First Amendment, Freedom of Speech, Against All Defendants;

7. C.R.S. § 24-34-301, *et seq.* — CADA, Discrimination Based on Sex, Race, and/or Sex-Plus-Race, Against All Defendants;

8. C.R.S. § 24-42-301, *et seq.* — CADA, Retaliation, Against All Defendants; and

9. Wrongful Discharge in Violation of Public Policy — Against All Individual Defendants.

**Defendants:**

Plaintiff Sylvia Murray asserts that the City and County of Denver and three Civil Service Commission members discriminated against her on the basis of her race, sex, and/or race-plus sex under state and federal antidiscrimination law, including the Fourteenth Amendment; retaliated against her for engaging in protected activity in violation of state and federal antidiscrimination law; violated her rights to free speech under the First Amendment; and violated Colorado's public

8

policy against wrongful discharge. The City Defendants assert the following defenses:

1.      Plaintiff's claims fail, in whole or in part, for failure to state a claim upon which relief may be granted.

2.      This Court may lack subject matter jurisdiction over Plaintiff's claims or some portion thereof.

3.      At all times, the City Defendants' actions were lawful, justified, and done in good faith.

4.      Plaintiff was not qualified to perform the duties of the Civil Service Commission Executive Director position.

5.      Plaintiff failed to satisfactorily perform her duties as the Executive Director of the Civil Service Commission and failed to meet the expectations of that position.

6.      Even if Plaintiff suffered a materially adverse employment action, there is no causal connection between Plaintiff's protected classes and the materially adverse action.

7.      Any claims or allegations brought by Plaintiff that occurred more than 300 days prior to the date she filed a Charge of Discrimination are barred.

8.      Plaintiff's claims are barred, in whole or in part, by the City Defendants' good faith compliance with the Colorado Anti-discrimination Act.

9.      Any and all actions that the City Defendants took concerning Plaintiff were based on reasonable, legitimate, non-discriminatory, non-retaliatory reasons, and were consistent with reasonable business necessity.

10.      The City cannot be held liable for any unlawful acts of supervisors or other decision-makers because the City exercised reasonable care to prevent and properly correct any

9

discriminatory or retaliatory behavior, and Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided by the City or to avoid harm.

11.     The City effectively promulgated and maintained policies prohibiting discrimination and retaliation and makes good faith efforts to prevent discrimination and retaliation in the workplace.

12.     Plaintiff's damages, if any, are the result of Plaintiff's own conduct.

13.     The amount of damages recovered by Plaintiff, if any, is limited by the Colorado Anti-Discrimination Act, 42 U.S.C. §§ 1981a(a-b) and 2000(e)(g), 29 U.S.C. § 626(b) and other applicable law.

14.     All of Defendants Foster's, Miller's, and Moore's actions were taken within the course and scope of their official appointments with the Civil Service Commission.

15.     Under the "intracorporate conspiracy doctrine," which provides that "a corporation cannot conspire with its own agents or employees" because the corporation and its employees "are members of the same collective entity" and, therefore, "there are not two separate people to form a conspiracy," Defendants Foster, Miller, and Moore could not have conspired with the City to discriminate or retaliate against, or harass, Plaintiff. *See Judson v. Walgreens Co.*, 2021 WL 1207445, at *4 (D. Colo. 2021). Employees and public officials cannot be liable for aiding and abetting under CADA if they were working within the scope of their employment and their alleged conduct is the same as that upon which the discrimination claim is based. *Id.* The Court explained, "To conclude otherwise in this case would invite individual liability against supervisory employees for any allegedly discriminatory actions they took within the scope of their employment."

10

16.     The cause of Plaintiff's damages, if any, as alleged in the Complaint are wholly unrelated to, and were not proximately caused by, any alleged acts or omissions by the City Defendants.

17.     Plaintiff has failed to mitigate her damages, if any.

18.     All actions taken by the City Defendants complied with all statutory obligations.

19.     Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to exhaust her administrative and/or other internal remedies.

20.     Plaintiff's claims exceed the scope of the administrative charges or proceedings Plaintiff brought before the Equal Opportunity Employment Commission and/or the Colorado Civil Rights Division.

21.     Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

22.     Even if discrimination was a motive in the City Defendants' conduct, which is specifically denied by the City Defendants, the challenged decisions still would have been made even in the absence of discrimination.

23.     No violation of Plaintiff's constitutional rights occurred as a result of the alleged conduct complained of.

24.     Plaintiff cannot show an affirmative link between the conduct of the City Defendants and the alleged constitutional deprivation.

25.     Defendants were not acting to intentionally deprive Plaintiff of a constitutional right as is required to state a claim under 42 U.S.C. § 1983.

26.     Defendants Foster, Miller, and Moore, both individually and in their official capacities, are entitled to qualified immunity from Plaintiff's claims of First Amendment

11

retaliation and discrimination under the Equal Protection Clause of the Fourteenth Amendment

brought pursuant to Section 1983.

27.     Defendants Foster, Miller, and Moore were not policymakers whose

responsibilities require more than simple ministerial competence, whose decisions create or

implement policy, and whose discretion in performing duties or in electing duties to perform is

not severely limited by statute, regulation, or policy determinations made by others.

28.     Defendants Foster, Miller, and Moore are not employees of the City; rather, they

are appointed public officials who serve limited roles on the Civil Service Commission at the

request of the Mayor and City Council.

29.     Plaintiff's claims fail to establish municipal liability against the City.

30.     The City has no policy, practice, or custom condoning or enabling the violation of

any person's civil rights, and, therefore, cannot be held liable for the actions of its employees or

public officials by virtue of a *respondeat superior* cause of action.

31.     No policy, practice, or custom of the City resulted in the violation of any rights of

any kind to which Plaintiff is entitled. Furthermore, Plaintiff's damages, if any, were not caused

by any policy, custom, or practice of the City.

32.     Plaintiff's speech or association, if any, was made pursuant to her employment

duties as Executive Director of the Civil Service Commission.

33.     Plaintiff's speech or association, if any, were not on matters of public concern,

which is required for First Amendment protection to attach.

34.     The City's interest as an employer in maintaining the efficient provision of public

services and avoiding detrimental impacts on close working relationships for which personal

loyalty and confidence are necessary outweighed Plaintiff's interest in speech or association, if any.

35.    Plaintiff's speech or association, if any, were not a substantial or motivating reason for the alleged adverse employment actions. Rather, the Civil Service Commission made its decision to terminate Plaintiff's employment prior to, and wholly apart from, any speech or association, if any.

36.    Indeed, the City Defendants would have taken the same actions with or without the protected speech or association, if any.

## 4. UNDISPUTED FACTS

1.  Ms. Murray is a Black woman.

2.  Defendant Denver was Ms. Murray's employer at all times relevant to the operative Complaint.

## 5. COMPUTATION OF DAMAGES

**Plaintiff:**

As a result of the Defendants' conduct, Ms. Murray has suffered significant damages. First, the sexist and racist environment at the Commission caused her significant emotional and physical distress. Second, Ms. Murray suffered economic damages as a result of her loss of employment.

Plaintiff seeks all appropriate relief at law and equity; declaratory relief; injunctive relief; actual economic damages as established at trial; compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses; punitive damages for all claims

13

as allowed by law in an amount to be determined at trial; issuance of an Order mandating appropriate equitable relief, including, but not limited to: issuance of a formal written apology from each Defendant to Plaintiff; mandatory training designed to avoid future similar misconduct by Defendants; pre-judgment and post-judgment interest at the highest lawful rate; attorney's fees and costs; and any such further relief as justice requires.

Some of Plaintiff's damages are not of the type that can be tallied here. Plaintiff has claims for emotional distress damages. These are not quantifiable other than by a jury. Undersigned counsel will provide Defendants in this matter with whatever quantifiable evidence is obtained to show measurement of damages, but civil rights violations like this are not given to easy description of losses and instead require that the jury announce their value.

Plaintiff's economic damages include her lost wages and benefits. During her employment, Ms. Murray earned a base salary of $163,130.31, plus substantial benefits. Despite her best efforts, Ms. Murray has not found re-employment since her June 1, 2024, termination.

A more precise computation of Plaintiff's damages, to the extent her damages are subject to such computation, will be provided during the normal course of discovery, and will be determined by a jury in its sound discretion following a presentation of the evidence at trial in this matter.

**Defendants:**

Defendants are not seeking damages but reserve their rights to seek damages based on discovery in this case.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a. The Fed. R. Civ. P. 26(f) meeting was conducted via Microsoft Teams meeting between counsel on January 6, 2026, at 2:30 p.m.

b.  Participants in the meeting were as follows:

1.  Mari Newman, Andy McNulty, and Madeline Leibin of NEWMAN | MCNULTY, LLC, for Plaintiff;

2.  Jonathan Saadeh of the Denver City Attorney's Office, City and County of Denver for Defendants.

c.  The parties will timely make their Rule 26(a)(1) disclosures.

d.  The parties have not agreed to conduct informal discovery.

e.  The parties agree to take all reasonable steps to reduce costs to discovery. Specifically, the Parties agree to the use of a unified exhibit numbering system; to denote new disclosure information in bolded and/or underlined text so that newly disclosed information is readily apparent; and, where requested, to consider conducting depositions remotely, via video conference, upon agreement of all counsel.

f.  The parties anticipate that their claims or defenses will involve the discovery of some electronically stored information. To the extent that discovery or disclosures involves information or records in electronic form, the Parties will take steps to preserve that information. The Parties agree that, to the extent feasible, the Parties will exchange information (whether in paper or electronic form) in PDF format.

g.  The parties have discussed the possibilities for a prompt settlement or resolution of the case by alternate dispute resolution. The parties will continue to work together in good faith to determine whether the matter can be resolved. To the extent there is a settlement meeting, the parties will report the result of any such meeting, and any similar future meeting, to the magistrate judge within 14 days of the meeting.

**7. CONSENT**

15

The parties consent to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a.  Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules: Exclusive of parties and experts, each side (Plaintiff is one side and Defendants, collectively, are one side) will be limited to fourteen (14) depositions.

b.  Limitations which any party proposes on the length of depositions: The Parties do not propose any modifications to the limitations on the length of depositions. A deposition is limited to one day of seven hours as provided in Fed. R. Civ. P. 30(d)(2).

c.  Limitations which any party proposes on the number of interrogatories: Plaintiff may serve 35 Interrogatories to Defendants, collectively. Defendants, collectively, may serve a total of 35 Interrogatories to be answered by Plaintiff.

d.  Limitations which any party proposes on the number of requests for production and/or requests for admission: Plaintiff may serve 35 Requests for Production and Requests for Admission to Defendants, collectively. Defendants, collectively, may serve a total of 35 Requests for Production and Requests for Admission to be answered by Plaintiff.

e.  Deadline for Interrogatories, Requests for Production of Documents and/or Admissions: The parties propose submission of the written interrogatories at any time after the date of the Scheduling Conference. The last written discovery requests shall not be served upon any adverse party any later than forty-five (45) days prior to discovery cut off.

f.  Other Planning or Discovery Issues: None.

The parties will comply with D.C.COLO.LCIVR. 7.1(a), District Judge Domenico's, and Magistrate Judge Starnella's practice standards for discovery disputes before filing an opposed

discovery motion and/or requesting a discovery hearing.

No opposed discovery motions are to be filed with the Court until the parties comply with D.C.COLO.LCivR.7.1(a). If the parties are unable to reach agreement on a discovery issue after conferring, they shall comply with Magistrate Judge Starnella's Discovery Dispute Procedures as outlined in the Uniform Civil Practice Standards of the United States Magistrate Judges regarding the issue. Both of these steps must be completed before any contested discovery motions will be adjudicated by the Court.

**9. CASE PLAN AND SCHEDULE**

a.   Deadline for Joinder of Parties and Amendment of Pleadings: The filing of amended and supplemental pleadings will be made pursuant to Fed. R. Civ. P. 15.

b.   Discovery Cut-off: **October 5, 2026**.

c.   Dispositive Motion Deadline: **November 9, 2026**.

d.   Expert Witness Disclosure**:**

(1)  Statement regarding anticipated fields of expert testimony, if any:

      a)   **Plaintiff**: Plaintiff anticipates calling retained experts in the following possible fields: economic damages, psychological damages, racial trauma, anti-racism.

      b)   **Defendants:** Defendants anticipate calling retained experts in the following possible fields: economic damages.

(2)  The Parties agree that they will each be limited to a total of four retained expert witnesses per side.

(3)  Designation of experts: Plaintiff shall designate all affirmative experts and provide opposing counsel with all information specified in Fed. R. Civ. P.

17

26(a) (2) on or before **July 6, 2026**. Defendants shall designate all

affirmative and rebuttal experts and provide opposing counsel with all

information specified in Fed. R. Civ. P. 26(a) (2) on or before **September 4,**

**2026**. Plaintiff shall designate all rebuttal experts and provide opposing

counsel with all information specified in Fed. R. Civ. P. 26(a) (2) on or

**October 2, 2026**.

e. Identification of Persons to Be Deposed[2]:

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| Sylvia "Niecy" Murray | TBD | TBD | 7 hours |
| Defendant Denver 30(b)(6) | TBD | TBD | 7 hours |
| Defendant Steven Foster | TBD | TBD | 7 hours |
| Defendant Gregory Moore | TBD | TBD | 7 hours |
| Defendant Amber Miller | TBD | TBD | 7 hours |
| Kathy Nesbitt | TBD | TBD | 4 hours |
| Ester Lee Leach | TBD | TBD | 4 hours |
| Independent Monitor | TBD | TBD | 4 hours |
| LaTonya Lacy | TBD | TBD | 4 hours |
| Kerry Tipper | TBD | TBD | 4 hours |
| DFD Chief Desmond Fulton | TBD | TBD | 4 hours |
| DPD Chief Ron Thomas | TBD | TBD | 4 hours |
| Denver City Councilmember Serena Gonzales-Gutierrez | TBD | TBD | 4 hours |
| Denver City Councilmember Sarah Parady | TBD | TBD | 4 hours |
| Denver City Councilmember Shontel Lewis | TBD | TBD | 4 hours |

## 10. DATES FOR FURTHER CONFERENCES

a. Status conferences will be held in this case at the following dates and times:

_____.

---

[2] The Parties reserve the right to take additional depositions of persons identified in the Parties' disclosures, discovery responses and through the course of discovery.

b.  A final pretrial conference will be held in this case on _____at o'clock _____m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement:

b.      The parties anticipate that the jury trial will take seven (7) days.

c.      Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, 103 Sheppard Drive, Durango, Colorado 81303-3439: None. The Parties believe that this case should be tried in Denver.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

**13. AMENDMENTS TO SCHEDULING ORDER**

The scheduling order may be altered or amended only upon a showing of good cause.


DATED at Denver, Colorado, this _____day of _____, 2026.

BY THE COURT:


_____
United States Magistrate Judge


APPROVED:

*s/ Madeline Leibin*_____
Mari Newman
Andy McNulty
Madeline Leibin
Newman | McNulty
1490 N. Lafayette Street, Suite 304
Denver, CO 80218
mari@newman-mcnulty.com
andy@newman-mcnulty.com
madeline@newman-mcnulty.com
720-850-5770

*Counsel for Plaintiff*

*s/ Jonathan D. Saadeh*_____
Jonathan D. Saadeh
Assistant City Attorney
Denver City Attorney's Office
City and County of Denver
1200 Federal Boulevard, 4th Floor
Denver, CO 80204
jonathan.saadeh@denvergov.org
720-944-2903

*Counsel for Defendants City and County of
Denver, Colorado, Steven Foster, Gregory
Moore, and Amber Miller*